## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

STANLEY K. CHAPMAN,      )
          )
     Plaintiff,     )
          )
v.          )     Case No. CIV-20-272-RAW-SPS
          )
KILOLO KIJAKAZI,[1]     )
Acting Commissioner of the Social   )
Security Administration,     )
          )
     Defendant.    )

## REPORT AND RECOMMENDATION

The claimant Stanley K. Chapman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. [2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight."
*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at
800-01.

### Claimant's Background

The claimant was sixty-three years old at the time of the administrative hearing (Tr.
69). He completed two years of college and has worked as an engineering administrator
(Tr. 22, 241). The claimant alleges he has been unable to work since January 29, 2018 due
to broken back, dumping syndrome, bowel incontinence, enlarged prostate, bladder
incontinence, high blood pressure, severe allergies, acid reflux, tachycardia, and
hemorrhoid issues (Tr. 240).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social
Security Act, 42 U.S.C. §§ 401-434, on February 22, 2018. His application was denied.
ALJ Laura Roberts conducted an administrative hearing and found that the claimant was
not disabled in a written opinion dated November 20, 2019 (Tr. 10-25). The Appeals
Council denied review, so the ALJ's written opinion is the final decision of the
Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She found the
claimant retained the residual functional capacity ("RFC") to perform sedentary work as
defined in 20 C.F.R. § 404.1567(a), except that he could only frequently kneel; only
occasionally    crouch,    stoop,    and    climb    ramps/stairs;    and    never    climb

ladders/ropes/scaffolds or crawl (Tr. 16-17). Additionally, she found that the claimant would take an extra five-minute break in the morning and in the afternoon, to use the restroom (Tr. 16-17). The ALJ thus concluded that the claimant retained the RFC to return to his past relevant work as an engineering administrator (Tr. 22-25).

### Review

The claimant alleges that the ALJ erred in assessing his RFC, which in turn affected the questions asked of the vocational expert and therefore her findings as to the job he could perform. The undersigned Magistrate Judge agrees that the ALJ failed to properly assess the claimant's RFC here, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of benign prostatic hyperplasia (BPH) and cervical, thoracic, and lumbar degenerative disc disease, as well as the nonsevere impairments of dumping syndrome, anxiety, depression, high blood pressure, allergies, acid reflux, tachycardia, and hemorrhoids (Tr. 12-13). Relevant medical records reflect that the claimant was repeatedly treated for both dumping syndrome and incontinence (Tr. 343). A March 7, 2018 note from OakDen Family Medical reflects that on March 20, 2017, a physician from St. John's Hospital in Tulsa, Oklahoma had written him a note permitting him to work from home due to BPH with urinary outlet obstruction and post-surgical dumping syndrome resulting in bowel and bladder incontinence (Tr. 375). The treatment note further stated that the claimant's ability for gainful employment would require a work-at-home accommodation (Tr. 376). In April

-4-

2018, the claimant was prescribed WelChol for his bowel/bladder problems, but he reported he could not afford it and was prescribed an alternative (Tr. 429)

On May 21, 2018, Dr. Stephanie Letney, D.O., conducted a consultative examination of the claimant (Tr. 406-413). In addition to noting some limited range of motion, she assessed the claimant with dumping syndrome following a cholecystectomy, incontinence of stool and urine, chronic low back pain and neck pain without radiation along with documented spondylosis, hypertension, BPH, seasonal allergies, hemorrhoids, and anxious affect with an abnormal interaction (Tr. 407). She recommended a psychiatric evaluation (Tr. 408).

The claimant continued to complain of back pain as well as problems with his dumping syndrome. On July 26, 2018, he was noted to have rectal irritation from dumping syndrome and was issued medication (Tr. 427). At an annual appointment for elevated PSA and BPH on April 4, 2019, treatment notes indicate the claimant had been on a number of medications, but most had been ineffective so he was a candidate for surgical intervention (Tr. 490). The claimant underwent a urolift on May 15, 2019, for treatment of his lower urinary tract symptoms, but reported one month later that it did not work (Tr. 528, 557). He had to restart medication in order to manage his symptoms (Tr. 529).

As to his mental impairments, on October 16, 2018, Dr. Kenny Paris conducted a mental status examination of the claimant (Tr. 463-468). Upon examination, he found the claimant had a diagnosis of major depressive disorder, single episode, moderate (Tr. 467). He noted that the claimant's memory skills appeared to be impaired, but he had not significant problems with persistence and pace (Tr. 467). However, he opined that the

claimant's *combination* of impairments both physical and mental lead him to greater impairments and made him less likely to be successful in a job setting, although he declined to opine on the *extent* of the claimant's physical limitations (Tr. 467). He further stated that, based on the exam and claimant's history, the claimant had a below average ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers (Tr. 467).

Initially and upon reconsideration, state reviewing physicians found, based solely on a spine disorder and no other severe physical impairment, that the claimant could perform light work but could only occasionally stoop and crawl, and frequently kneel and crouch (Tr. 114-115, 133-134). Reviewing physicians found that his depression was a nonsevere impairment (Tr. 130).

In her written opinion at step two, the ALJ found the claimant only had mild limitations in the four areas of mental functioning, and summarized Dr. Paris's opinion. She stated she found it partially persuasive as to the claimant's below average abilities but that "below average" was non-specific and only somewhat persuasive. She stated that the impact of the claimant's physical impairments was beyond his expertise but found that the evaluation did not support mental RFC limitations (Tr. 15). At step four, the ALJ summarized the claimant's hearing testimony, as well the medical evidence in the record as to the claimant's physical impairments, but made *no mention* of his mental impairments at this step. As relevant to this appeal, she noted the claimant's history of BPH, and cited a treatment record prior to the alleged onset date in which the claimant reported needing to urinate less than two hours after doing so already, which she found was not "fully

inconsistent with the integration of two additional breaks with those typically allowed in the eight-hour working day," noting this would provide four breaks in addition to lunch (Tr. 19). She noted confusingly that the claimant had reported going to the bathroom four-six times per night, but that getting up and walking around helped his pain (Tr. 20-21); she did not clarify how these were related or how that changed his frequency of need to use the restroom. She further noted his testimony that he used the restroom twenty times during the day, but asserted the record was inconsistent with this level of urinary frequency, noting records related to the claimant's overactive bladder, incontinence but not frequency, and difficulty postponing urination (Tr. 21). She asserted that the RFC that allowed him to take additional restroom breaks was sufficient (Tr. 21). She ultimately concluded that the claimant was not disabled (Tr. 25).

The claimant contends that the ALJ failed in properly assessing his RFC to account for all of his impairments, which directly affected her finding that he could return to his past relevant work. "The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F.

Supp. 2d 1175, 1187 (D. Kan. 2003)).  Here, the ALJ made a finding that an extra five-minute break in the morning and afternoon would account for the claimant's incontinence, and this specific finding seems to be based on a record prior to the alleged onset date (stating he would need to use the restroom after less than two hours) and therefore prior to the worsening of the claimant's symptoms.  She cites to no evidence in the record *after* the alleged onset date that these two breaks would account for the claimant's incontinence, and she rejected the physician opinion that the claimant would need to work from home because he based his opinion on another doctor's opinion and did not provide imaging of the abdomen or prostate.  This leaves no opinion on which to base this RFC finding.  *See Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Furthermore, the ALJ erred in her analysis of the claimant's mental impairments. Because the claimant *did have* recognized severe impairments at step two, the ALJ was required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four.  *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (*quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir.

2004) *and* 20 C.F.R. § 404.1523). The ALJ did not, however, properly perform this analysis; although she criticized Dr. Paris' findings as to the claimant's combination of impairments at step two, she provided no analysis of her own to account for the claimant's combination of impairments at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

"To sum up, to the extent the ALJ relied on h[er] finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). This is of particular concern where, as here, there is an indication that the claimant's numerous nonsevere impairments (those recognized at step two and those not recognized at step two) may nonetheless have had a combined effected in his ability to function where there are multiple treatment records indicating that the claimant's nonsevere mental impairments, along with his severe impairments of BPH and cervical, thoracic, and lumbar degenerative disc disease, may have had a combined limiting effect in his ability to function based on Dr. Paris's assessment. *See Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) ("The ALJ's step-two finding [of the severe impairment of chronic back pain] makes it impossible

-9-

to conclude at step four that her pain was insignificant][.]"). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain.  He did not include any such limitations in either his RFC determination or his hypothetical question.  Nor did he explain why he excluded them.  In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). Because the ALJ failed to properly account for all of the claimant's impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of all of the claimant's impairments.  If such analysis results in any changes to the claimant's RFC—physical impairments, mental impairments, or both—the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith.  Any objections to

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P.

72(b).

 **DATED** this 7th day of March, 2022.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**